# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD F. McCUE, Inmate #N46136, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 05-554-DRH |
| ) | |
| STEVE ALDRIDGE, WILLARD ELYEA, ) | |
| and TERRY CALIPER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

### *Outstanding Motion*

Now pending before the Court is Plaintiff's motion to correct the complaint (Doc. 7). Under the local rules,

> Amended pleadings and supplemental pleadings shall contain all allegations which a party intends to pursue. All new material in the amended pleadings shall be underlined. The original of the amended pleading shall be attached to the motion to amend the pleading so that it may be filed if the motion to amend is granted.

Local Rule 15.1; *see* FED.R.CIV.P. 15. Plaintiff did not include with his motion a copy of the corrected complaint to be filed if the motion is granted. Normally, this would be grounds for denying the motion to amend or correct. However, in this instance, Plaintiff indicates that in paragraph eleven of the statement of claim, he incorrectly stated the date of the incident discussed

in that paragraph. He asks that the Court correct the date from "5/5/05" to "5/5/04." This is a minor error and Plaintiff does not seek to make additional or more elaborate changes to his complaint. Accordingly, the motion to correct the complaint (Doc. 7) is **GRANTED**. All parties are put on notice that the date of the events described in paragraph eleven of the "statement of claim" section of the complaint is "5/5/04."

## *Threshold Review*

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds that none of the claims in the complaint may be dismissed at this point in the litigation.

## *Factual Allegations*

Plaintiff states that on April 5, 2004, Defendant Aldridge, a dentist, determined that Plaintiff would need a new upper denture because Plaintiff's current one was cracked. Plaintiff states that the crack was a result of normal wear, not negligence. Defendant Aldridge told Plaintiff that he would have to prepay the full cost of the denture before it would be replaced. The next day, Plaintiff

spoke to Tamms Medical Director, Dr. Powers (not a defendant), who told Plaintiff he should not have to pay for the denture, but that he should contact defendant Terry Caliper, Tamms Health Care Administrator, before he filed a grievance on the matter. On April 15, Plaintiff spoke to Defendant Caliper who told him she would speak to defendant Aldridge about payment. Plaintiff states that on April 21, his denture broke into two pieces, making it totally unusable. On April 23, he told Defendant Caliper about the fractured denture, and offered to pay for the repair if necessary. Defendant Caliper told Plaintiff she had spoken to Dr. Powers and Plaintiff would not have to pay for the new denture. On April 27, Dr. Powers also assured him he would not have to pay.

On April 28, 2004, Dr. Aldridge took an impression for a new denture on the top teeth but "disobeyed Dr. Powers lawful order to furnish Plaintiff with a new denture without any payment." When Plaintiff saw Dr. Aldridge again on May 5, Plaintiff told him that Dr. Powers and Defendant Caliper had told him he did not have to pay for the denture. Dr. Aldridge told him that if he did not prepay for the denture, then he would "have to do without a denture and treatment for his injured upper gum." Plaintiff did not pay for the denture. Plaintiff states that as a result of not having the denture, his top gum was sore, swollen, bleeding, and painful. Plaintiff requested a rubber mouth guard to prevent him from grinding his teeth and a soft diet. Dr. Aldridge refused both.

Plaintiff states that on July 1, 2004, Defendant Willard Elyea, Illinois Department of Corrections Medical Director, conspired with defendant Caliper and Aldredge to extort funds from and retaliate against Plaintiff for complaining to Illinois State Comptroller D.W. Hynes regarding his dental problems and refusal for treatment by Defendant Aldridge. Plaintiff states that on July 21, 2004, Defendant Aldridge refused to treat Plaintiff, saying that Plaintiff "would have to pay for writing to Mr. Hynes." Defendant Aldridge again denied a rubber mouth guard and soft diet.

Plaintiff put in requests to see Dr. Aldridge on August 11 and September 1, 2004, but he was not allowed to see him until November 8. At that appointment, Plaintiff requested treatment for his injured upper gum, but that was again refused. Plaintiff states that all Defendant Aldridge wanted was for Plaintiff to sign the money voucher for payment of the denture. Plaintiff did so at this appointment. Seven weeks later, on December 27, Dr. Aldridge took impressions for the upper denture. Plaintiff states that eight months had passed since the crack in the denture was first noticed by Defendant Aldridge.

Plaintiff states that on February 7, 2005, he was told by nurses G. Hart and L. Stokes (not defendants) that Defendant Caliper had informed them that Plaintiff was not allowed to be seen at sick call. On February 10, Plaintiff saw Dr. Chandra (not a defendant) on night rounds (Plaintiff had been refused sick call) and showed him his bleeding upper gum. Dr. Chandra ordered Oragel to ease the pain.

On February 14, 2005, Plaintiff had an emergency dental appointment with Defendant Aldridge, who "had to finally admit to the on going trauma to Pla[intiff's] upper gum, but he still refused to order a cheap generic mouth guard to protect it from being constantly injured."

Plaintiff received his denture on June 6, 2005, three months after Defendant Caliper originally told him it had arrived and fourteen months after the cracked denture was first diagnosed. Plaintiff states that during that period, he suffered constant pain, headaches, stress, humiliation, sleep deprivation, and mental anguish. He had to endure his bottom teeth cutting into his upper gum while closing his mouth, eating, and involuntary grinding of his teeth while sleeping, resulting in pain, soreness, swelling, infection, and bleeding gums and eventual disfigurement to his upper gum. Plaintiff states that he lost 25 pounds during the fourteen-month period and suffered from chronic

and severe stomach pain and constipation from not being able to properly chew his food. During this period, Defendant Aldridge refused to give Plaintiff a rubber mouth guard to prevent some of this damage, and except for one month, refused to order a soft diet to facilitate eating. Plaintiff claims that defendants' refusal to provide him with the denture until he paid for it, the mouth guard, and the soft diet, amounted to deliberate indifference to his serious medical needs. Plaintiff further claims that defendants retaliated against him by excessively delaying the denture, denying him sick call, and denying the mouth guard and soft diet, all after he complained about his treatment to the Comptroller of the State of Illinois.

### *Legal Standards*

***Deliberate Indifference to Serious Medical Needs.*** The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious

medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health--that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended

the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates." *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Furthermore, allegations that an inmate who is denied his dentures and cannot chew his food, and suffers bleeding, headaches, and disfigurement, state a serious medical need. *Id.* Based on these standards and Plaintiff's allegations, this claim of deliberate indifference to his serious medical needs cannot be dismissed at this point in the litigation.

***Improper Retaliation.*** Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Based on these standards and Plaintiff's allegations, this retaliation claim cannot be dismissed at this point in the litigation.

## *Summary and Conclusion*

**IT IS FURTHER ORDERED** that Plaintiff shall complete and submit a USM-285 form for defendants ***Steve Aldridge, Willard Elyea, and Terry Caliper*** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order. The Clerk is **DIRECTED** to send Plaintiff **3** USM-285 forms with Plaintiff's copy of this Memorandum and Order. **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285**

**form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants *Steve Aldridge, Willard Elyea, and Terry Caliper*. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants *Steve Aldridge, Willard Elyea, and Terry Caliper* in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the

request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties*

*consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

Finally, now pending before the Court is Plaintiff's Motion for Order to Proceed (Doc. 8), in which Plaintiff asks that the defendants be served in the action. The Court has now ordered service and referred the case to a magistrate judge for further proceedings. Accordingly this motion (Doc. 8) is **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED: February 22, 2006**

/s/  David RHerndon
**DISTRICT JUDGE**